**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| LUCY CARROLL, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. |
| | § | |
| | § | |
| WILLIAM BARR, Attorney General, | § | |
| Department of Justice, | § | JURY DEMANDED |
| Defendant. | § | |
| | § | |

**COMPLAINT**

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Plaintiff LUCY CARROLL, in the above numbered and entitled case, complains of WILLIAM BARR, ATTORNEY GENERAL AND HEAD OF THE DEPARTMENT OF JUSTICE (DOJ). (Hereafter, "Defendant and/or Agency"), Defendant in the above numbered and entitled case and for cause(s) of action would respectfully show unto the Court and jury as follows:

**I. PARTIES**

1.      Plaintiff, LUCY CARROLL is a citizen of the United States, who was employed as a Legal Assistant, by the DEPARTMENT OF JUSTICE, U.S. ATTORNEYS OFFICE at the Agency's office in Houston, Texas, during the time period wherein the present cause of action occurred. LUCY CARROLL has been employed by the DEPARTMENT OF JUSTICE, U.S. ATTORNEYS OFFICE from October 21, 2001to the present.

LUCY CARROLL is a federal employee within the meaning of The Americans with Disabilities Act of 1990 (ADA). The ADA Amendments Act of 2008 (ADAAA), 42

U.S.C. §12101, *et seq.*, 29 C.F.R. 1614.203(b) 2008, the Rehabilitation Act of 1973, as amended, at 29 U.S.C. §794 (the "Rehabilitation Act"), 29 U.S.C. §701-7961 (2006) and at all relevant times was a federal employee. LUCY CARROLL (Hereafter "Lucy") is a resident of the city of Harris County, Texas.

2.     Defendant WILLIAM BARR is the ATTORNEY GENERAL OF THE UNITED STATES AND HEAD OF THE DEPARTMENT OF JUSTICE, which is an agency of the United States government. Defendant does business at the United States Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001. Defendant WILLIAM BARR is sued in his official capacity as ATTORNEY GENERAL OF THE UNITED STATES AND HEAD OF THE DEPARTMENT OF JUSTICE, and as such, is amenable to suit as provided in The Americans with Disabilities Act of 1990 (ADA). The ADA Amendments Act of 2008 (ADAAA), 42 U.S.C. §12101, *et seq.*, 29 C.F.R. 1614.203(b) 2008, the Rehabilitation Act of 1973, as amended, at 29 U.S.C. §794 (the "Rehabilitation Act"), 29 U.S.C. §701-7961 (2006), and may be served by serving Attorney General, WILLIAM BARR.

## II. JURISDICTION

3.     This action arises under in The Americans with Disabilities Act of 1990 (ADA), The ADA Amendments Act of 2008 (ADAAA), 42 U.S.C. §12101, *et seq.*, 29 C.F.R. 1614.203(b) 2008, the Rehabilitation Act of 1973, as amended, at 29 U.S.C. §794 (the "Rehabilitation Act"), 29 U.S.C. §701-7961 (2006), and 28 U.S.C. Section 1346.

4.     All of the necessary administrative prerequisites, has been met prior to filing the instant action, as Plaintiff has filed timely complaints of discrimination and retaliation

with her federal employer, the Department of Justice, and brings her claims more than 180 days after she filed her formal EEO Complaint.

5.    The Southern District of Texas is where the action complained of in the present matter took place, where the employment records relevant to the unlawful practices are kept, and where the Plaintiff worked during the time-period wherein the unlawful actions of the Defendant occurred.

6.    The jurisdiction of the Court, is invoked pursuant to 28 US.C. §1343(a)(4).

### III. VENUE

7.    Venue is appropriate in this District pursuant to 28 U.S.C. §1391 because the Defendant resides in this judicial district and a substantial part of the events giving rise to this action took place within this judicial district.

### IV. FACTS

8.    Lucy entered on duty with the Agency as a Legal Assistant on or about October 21, 2001.

9.    On or about September 14, 2017, Lucy's immediate supervisor, Supervisory Paralegal Specialist Ninfa Salazar (Hispanic) instructed Lucy to perform receptionist duties. Earlier in 2016, Ms. Salazar informed Lucy to perform receptionist duties when needed. However, Lucy responded that she was unable to perform the receptionist duties due to her disability. It was Lucy's understanding, that after she had put Ms. Salazar on notice of her disability effecting her ability to do reception duties, then she would then not be required to perform them. However, Ms. Salazar continued to insist that Lucy perform the receptionist duties.

10.    On or about April 12, 2017, Lucy provided medical documentation to

management that justified her assertions that her disability prohibited her from working in the receptionist area, and requested that she not be forced to work in the receptionist area.

11.     Lucy met with Executive Assistant United States Attorney (EAUSA) Jennifer Lowery (Caucasian) about the receptionist duties. Ms. Lowery suggested that Lucy apply for a reasonable accommodation. Following the meeting, Lucy applied for a reasonable accommodation. On or about August 1, 2017, management granted Lucy's reasonable accommodation request. Although, management granted Lucy's request, management instructed Lucy to perform the receptionist duties, as needed, such as during breaks and at lunch. Management misinterpreted her reasonable accommodation request and used it against her. Prior to and during her reasonable accommodation request, Ms. Salazar constantly asked to review Lucy's medical documentation.

12.     On or about July 18, 2017, Ms. Salazar emailed Lucy and stated that she needed to review Lucy's medical documentation, so that she could make a decision on Lucy's reasonable accommodation request. Indeed, Ms. Salazar became upset, after Lucy told her that the Human Resources Officer (HRO) Melissa Vaughn, Ms. Lowery, and United States Attorney Abe Martinez were the only persons allowed to view her medical documentation.

13.     On or about September 14, 2017, Ms. Salazar, instructed Lucy to perform the receptionist duties and stated that Lucy would be categorized as insubordinate if she did not comply.  In addition, Ms. Salazar stated that if Lucy refused to perform the receptionist duties, it would negatively affect Lucy's

performance evaluation. Lucy felt threatened by Ms. Salazar's comments and proceeded to the receptionist area to perform the duties.

14.     When Lucy began performing the receptionist duties, she immediately experienced an anxiety attack, and retreated to her office.   Ms. Salazar went to Lucy's office and confronted her about leaving the receptionist area. Lucy asked Ms. Salazar to leave her office. Ms. Salazar slammed the door and exited Lucy's work area. Paralegal Catrina Johnson heard the exchange and went to Lucy's office to check on Lucy. Upon Lucy's request, Ms. Johnson then called Lucy's psychologist (due to Lucy having an anxiety attack) and informed Ms. Lowery about the situation.

15.     From on or about October 2, 2017 through November 29, 2017, management charged Lucy with leave without pay. Lucy took leave in October and November 2017, due to hospitalization (placed on at home medical leave by doctor), anxiety, and depression. During this time period, Lucy notified management each time she needed to use leave, but neither HR personnel nor management informed her that she lacked sufficient leave to cover her absences; nor, was Lucy advised of other leave alternatives to avoid financial hardship/non-pay status.

16.     On or about November 29, 2017, Ms. Lowery and Melissa Vaughn told Lucy that she had exhausted her leave balance and was on leave without pay. In addition, Ms. Lowery and Melissa Vaughn stated, that Lucy needed to participate in the Voluntary Leave Transfer Program (VLTP) or be on leave without pay. Lucy immediately applied, for the VLTP and; was accepted into the

program.

17.     On or about December 8, 2017, Lucy received a proposed 2-day suspension, placed on a leave restriction, and had her compressed work schedule terminated. The proposed 2-day suspension originated from Lucy allegedly arguing with Ms. Salazar in September. Lucy had explained several times to management that she removed herself from Ms. Salazar's presence that day because of Ms. Salazar's negative tone towards her. However, Ms. Salazar viewed Lucy's actions as rude and insubordinate.

18.     In addition, the leave restriction was punitive in nature and coincided with the time-period Lucy was at the hospital with health issues. It should be noted that each time Lucy went out on leave, she notified management but neither management nor HR personnel informed Lucy that she lacked sufficient leave to cover her absences.

19.     As noted in paragraph 17 above, on or about December 8, 2017, Lucy's compressed work schedule was terminated.  Lucy had worked a compressed work schedule for several years without incident. Her compressed work schedule hours were Monday-Friday, 8:00 A.M. -6:00 P.M., which included the second Monday off. However, her new hours would become Monday-Friday, 9:00 A.M. - 6:00 P.M. Prior to disclosing her medical condition, management never had any issues with Lucy's leave. In the past management would work with her to resolve any leave issues.

20.     On or about December 23, 2017, Ms. Salazar said if Lucy gave her (Salazar) permission to view her medical records, Ms. Salazar would fix Lucy's

situation and make it go away. In addition, Ms. Salazar requested that Lucy's doctor re-write her reasonable accommodation request.

21.     On or about December 27, 2017, Ms. Salazar instructed Lucy to perform the receptionist duties.

22.     On or about January 19, 2018, Ms. Lowery told Lucy to serve the proposed 2-day suspension.

23.     On or about January 22, 2018, Ms. Lowery continued to harass Lucy by asking her to provide additional medical documentation that supported Lucy's reasonable accommodation request. Ms. Lowery told Lucy that she needed to produce the additional medical documentation, or expect to be assigned to the receptionist area on a limited basis.

24.     On or about January 31, 2018, Lucy received a "Satisfactory" rating on her employee performance evaluation. However, prior to disclosing her disability to the agency, Lucy had received a higher rating than "Satisfactory" on her performance evaluations.

25.     Lucy was clearly qualified for the Legal Assistant position.  At all relevant times, Lucy continued to be qualified to fulfill the requirements of the Legal Assistant position.

26.     On information and belief, Lucy asserts that the Defendant acted with malice and in reckless disregard of Lucy's rights and welfare.

27.     Defendant, through its subordinates, retaliated against Lucy for engaging in the EEO process in violation of the ADA.

## V.  CAUSES OF ACTION

28.    Lucy incorporates the preceding and proceeding paragraphs into this paragraph by reference. The above described facts constitute retaliation and discrimination based on disability in violation of The Americans with Disabilities Act of 1990 (ADA), The ADA Amendments Act of 2008 (ADAAA), 42 U.S.C. §12101, *et seq.*, 29 C.F.R. 1614.203(b) 2008, the Rehabilitation Act of 1973, as amended, at 29 U.S.C. §794 (the "Rehabilitation Act"), 29 U.S.C. §701-7961 (2006).   Defendant took adverse actions against Lucy because of her disability, as well as being in retaliation for her opposition to such unlawful conduct.

29.    Lucy incorporates the preceding and proceeding paragraphs into this paragraph by reference. The Defendant acted both negligently and maliciously, by not providing Lucy proper reasonable accommodations or, engaging in the interactive process when she disclosed her disability in violation of The Americans with Disabilities Act of 1990 (ADA), The ADA Amendments Act of 2008 (ADAAA), 42 U.S.C. §12101, *et seq.*, 29 C.F.R. 1614.203(b) 2008, the Rehabilitation Act of 1973, as amended, at 29 U.S.C. §794 (the "Rehabilitation Act"), 29 U.S.C. §701-7961 (2006). The Defendant's actions amounted to a hostile work environment for Lucy.

## VI.  DAMAGES

30.    Lucy's claims of discrimination and retaliation are within the jurisdictional limits of this Court.

31.    Lucy incorporates the preceding and proceeding paragraphs into this paragraph by reference. The conduct described above proximately caused actual and compensatory damage to Lucy, including but not limited to lost wages, benefits,

humiliation and emotional distress, physical pain and suffering, medical services, damage to her personal reputation, damage to her professional reputation, damage to her earning capacity, and damage to her enjoyment of life.

32.     Lucy is entitled to recover reasonable attorney fees pursuant to EAJA 28 U.S.C. § 2412(b), The Americans with Disabilities Act of 1990 (ADA), The ADA Amendments Act of 2008 (ADAAA), 42 U.S.C. §12101, *et seq.*, 29 C.F.R. 1614.203(b) 2008, the Rehabilitation Act of 1973, as amended, at 29 U.S.C. §794 (the "Rehabilitation Act"), 29 U.S.C. §701-7961 (2006).

## PRAYER FOR RELIEF

33.     WHEREFORE, Lucy requests that this Honorable Court advance this case on the docket, order a jury trial at the earliest practical date, and grant Lucy the following relief pursuant to all federal law and statutes cited in the preceding and proceeding paragraphs, including, but not limited to the following:

(a)     Grant Lucy permanent injunction enjoining Defendant, its agents, successors, employees, and those acting in consort with Defendant, from continuing to violate Lucy's rights;

(b)     Issue an order awarding Lucy back pay with interest, fringe benefits, and any other appropriate relief necessary to make Lucy whole and compensate her for the civil rights violations described above;

(c)     Award Lucy compensatory damages for mental anguish;

(e)     Award Lucy prejudgment and post-judgment interest as allowed by law;

(f)     Award Lucy attorney fees and costs of this suit;

(g)     Award Lucy such other legal and equitable relief as this Court deems

just and proper;

(h)     Award Lucy damages requested in part VI of this Complaint;

(i)     Award Lucy all other relief, in law and equity, to which she may

be entitled.


Respectfully submitted,

/s/ Ashok Bail_____
Ashok Bail
Attorney for Plaintiff
3120 Southwest Freeway, Suite 450
Houston, TX 77098
Tel. No. (832)-216-6693
Fax. No. (832)-263-0616
E-mail: ashok@baillawfirm.com